Scranton *v.* Clark.

SCRANTON & OTIS *vs.* CLARK.

In this state, the rule of *caveat emptor* which obtains in the common law, is subject to the exception that a warranty of title in the vendor is implied in a contract of sale. But this exception is limited to cases where the vendor is, at the time, in the possession of the thing sold.

The possession of the vendor is the foundation of the implied warranty.

Where J. made a contract to sell the promissory note of C. to L. when he was not its owner, and it was not in his possession; *Held* that the purchase was at the risk of L.; and the law implied no warranty by J. that he had the title to the note; and that although J. subsequently acquired the title, this did not enure to the benefit of L., and render a payment by C. to L. good and effectual, and an extinguishment of the note.

THIS was an appeal by the plaintiffs from a judgment rendered at the circuit, after a trial by jury. The action was brought upon a promissory note, made by the defendant, dated October 18, 1855, and payable to E. B. Litchfield, or order, for the sum of $2673.37, one year after date. It was claimed by the defendant, that on the 8th day of November, 1858, the note belonged to one A. G. Jerome, and was in his possession; that he sold it to W. W. Leland, and that it was paid by the defendant to Leland. The plaintiff claimed that the note did not belong to Jerome at the time of the sale to Leland, but belonged to E. C. Litchfield, and was in his possession; that E. C. Litchfield afterwards, on settlement of accounts, transferred it to Jerome, who sold it to E. B. Litchfield, and by whom it was transferred to the plaintiff. Among other things, the judge charged the jury,

Scranton *v.* Clark.

1. That if Jerome was the owner of the note in 1858, when it was said he sold it to Leland, and he did so sell it, but did not deliver it, then the note was paid, and the plaintiffs could not recover. 2. That if Jerome was not the owner of the note in 1858, at the time he was said to have sold it to Leland, and he did so sell it, and he afterwards became the owner of it, then if Clark had paid it to Leland, who had purchased it, the plaintiffs could not recover, because Jerome must be deemed to have warranted the title, and if he acquired the title after a sale to Leland, it then became extinguished by operation of law. To the second proposition the counsel for the plaintiffs excepted. The jury rendered a verdict for the defendant.

*J. W. Gilbert*, for the appellants. I. The verdict should be set aside, upon the ground that it is decidedly against the weight of evidence; and a new trial should be granted. (*Jackson* v. *Sternbergh*, 1 *Caines*, 162.)

II. The charge was erroneous: 1st, in submitting to the jury the question whether there was an *actual* sale of the note; 2d, in the instruction that a vendor *not in possession* warrants the title; and 3d, in applying the doctrine of estoppel by force of the *covenant* of warranty to defeat the plaintiff's right to recover. 1. It is clear from the evidence, that at the time of the trade with Leland, *Jerome had neither the title to, or the possession of the note.* He could not, therefore, make a *valid sale* of it. The only exceptions to this rule, even when the vendor is in possession, are sales in market overt, and the one under the Mosaical law. (*Exodus* 22, 1.) His liability then, would depend on the *agreement* between him and Leland, or upon his *fraud*, if any were practised. (*Robinson* v. *Anderton, Peake,* 94. *Early* v. *Garrett*, 9 *B. & C.* 932.) 2. The transaction was an *exchange of land for a batch of notes,* and not a *sale*. And if Jerome incurred any liability, it arose because he affirmed that the note in suit was among those exchanged. (*Sedg.*

Scranton *v.* Clark.

*on Dam.* 295.) But no proof was given of any statement made by Jerome on the subject at the time of the exchange. 3. Promissory notes can be transferred only by written indorsement or assignment, or by delivery. (1. *R. S.* 768, § 1. *Stat.* 3 *and* 4 *Anne,* 2 *Ev. Stat., part* 3, *ch.* 4, *No.* 2. *Minot* v. *Gibson,* 1 *H. Bl.* 569. 1 *Pars. Cont.* 204.) No warranty arises where the surrounding circumstances show that no warranty was intended. (*Story on Sales,* § 367, *a.*) 4. No implied warranty arises upon the sale of a chattel, when the *seller is out of possession,* and no affirmation of title is made. (*McCoy* v. *Artcher,* 3 *Barb.* 323, *and cases cited. Edick* v. *Crim,* 10 *id.* 445. 2 *Kent's Com.* 478. 1 *Pars. on Cont.* 458. *Hopkins* v. *Grinnell,* 28 *Barb.* 537.) 5. But if there was an *implied warranty* by Jerome of his title to the note, no such effect can be given to it as is asserted in the charge. (*a.*) A warranty can work an estoppel only in conjunction with an actual conveyance. In other words, it requires an estate, rightful or wrongful, to support it. (2 *Trask on Real Prop.* 476, § 41. *Seymour's case,* 10 *Co.* 96. *Rawle, Cov. for Tit.* 405–436.) See also *Delaware Bank* v. *Jarvis,* (20 *N. Y. Rep.* 230.) (*b.*) And it requires an *express covenant* of warranty to create an estoppel. (*Jackson* v. *Wright,* 14 *John.* 193. *Pelletreau* v. *Jackson,* 11 *Wend.* 110. *Edwards* v. *Varick,* 5 *Den.* 665. 1 *R. S.* 738, § 140. 2 *Smith's Lead. Cas.* 460, *Am. note.* 1 *Cow.* 616. 4 *Wend.* 622–300. (*c.*) A warranty would not have the effect to divest a title acquired from the original grantor, by a *bona fide* purchaser, who should be entitled to the protection of the recording acts. (*Rawle, sup.*) For the same reason, it cannot be extended so as to divest the title of the transferree of a promissory note, even though he receives it after maturity. The effect of an estoppel is to make an after acquired title enure to the benefit of the original grantee, *not to extinguish the subject of the grant.* To work an extinguishment, Leland, Clark and Jerome should be parties, so that a judgment would be a ar, so as to protect Clark

against another action on the note, and Jerome against an action for breach of warranty. An overdue note continues to be negotiable in like' manner as it was before maturity. And a *bona fide* purchaser takes it only subject to such equities and defenses as arise from the note itself, or the transaction in which the note originated, and not to any collateral matters. .(*Williams* v. *Matthews*, 3 *Cowen*, 260. *James* v. *Chalmers*, 2 *Seld.* 214, 215. *Brittan* v. *Hull*, 1 *Hilt.* 528. *Pars. Mer. Law*, 101. *Code*, § 112. *Beckwith* v. *Union Bank*, 4 *Sand.* 605. *S. C.* 5 *Seld.* 211. 3 *Kern.* 622. *Edwards on Bills*, 60.) And this is in accordance with the well established rule, *that a sale without a delivery is not valid as against a third party*, without notice. For if the same thing be sold by the vendor to two parties, *by conveyances equally valid,* he who *first gets possession* will hold it. (1 *Pars. on Cont.* 441. 4 *Wend.* 300.) *A fortiori,* ought the title of the plaintiffs to be preferred, the conveyance to them being valid, and the alleged sale to Leland not having been followed by any conveyance whatever. (*Peabody* v. *Fenton,* 3 *Barb. Ch.* 462, *and cases cited. Keyser* v. *Harbeck,* 3 *Duer*, 388–391.) (*d.*) The doctrine that the obligation of a warranty of the title to a chattel runs with it so as to bind privies merely, is certainly anomalous. To constitute a breach a judgment in which the warrantor was represented, and eviction was always necessary. (1 *Smith's Lea. Cas.* 77, *Am. note. Vibbard* v. *Johnson,* 19 *John.* 79.)

III. The utmost relief, which upon all the facts, and according to the justice of the case, the defendant can reasonably claim, is to be put in *statu quo,* so far as he was induced by Jerome's statements to change his position, and has been injured thereby. This, if the alleged payment to Leland had been a real one, would entitle him to a deduction of $300 and interest. But, for obvious reasons, his indorsement of that amount on Leland's note, under the circumstances, did not affect the liability of Leland to him, and he has not therefore been injured at all.

Scranton *v.* Clark.

*L. S. Chatfield,* for the respondent.   I. The jury found that Jerome sold the note to Leland, and that the defendant paid it to Leland after he so purchased it.   These were purely questions of fact, and the finding is conclusive.   In any aspect of the case, the first proposition was necessary to be found, to wit : That Jerome sold the note to Leland. This is, therefore, fixed by verdict.

II.  And it is immaterial whether Jerome then owned the note or not.   When he sold it he warranted the title.   This warranty is always implied on the sale of a chattel.   (*Defreeze* v. *Trumper,* 1 *John.* 274.   *Rew* v. *Barber,* 3 *Cowen,* 272.   *Sweet* v. *Colgate,* 20 *John.* 196.   *Welsh* v. *Carter,* 1 *Wend.* 185.   *Duffee* v. *Mason,* 8 *Cowen,* 25.   *McCoy* v. *Artcher,* 3 *Barb.* 323.   *Edick* v. *Crim,* 10 *id.* 445.   1 *Par. on Cont.* 457.   2 *Kent's Com.* 478.)   And, if he at any time afterwards acquired title to it, the title so acquired belonged to his transferree.

III.  Would the defense of Clark, that he had paid the note to Leland after the sale to him, be a good defense to an action brought by Jerome on his subsequently acquired title? Of this there can be no doubt.   It is submitted that one deriving title from him (the note being dishonored) stands in his shoes, and is subject to the equities and defenses existing against him at the time of the transfer.   A good defense against Jerome would be a good defense against all subsequent holders.   (*Williams* v. *Matthews,* 3 *Cowen,* 252.   *De Mott* v. *Starkey,* 3 *Barb. Ch.* 403.   *Reed* v. *Warner,* 5 *Paige,* 650.   *Comstock v. Hoag,* 5 *Wend.* 600.   *Ehle* v. *Judson,* 24 *Wend.* 97.   *Lansing* v *Lansing,* 8 *John.* 454.) Again ; Jerome promised to deliver it to Clark, if found. That promise binds all who claim through him.

IV.  A warranty of title to realty carries a subsequently acquired title by the grantor over to the grantee *ex propria vigore.*   Such title enures to the benefit of the grantee, with warranty.   The *principle* is precisely the same when applied to the sale of personal property.   It is that a man shall not

sell a thing and keep it in hostility to his grantee, whatever may be the pretext ; so that if he has not title when he sells, but afterwards acquires it, the new title belongs to the grantee. (*Jackson* v. *Bull*, 1 *John. Cas.* 81, 90, 91. *Jackson* v. *Stevens*, 16 *John.* 110. *Jackson* v. *Hubble*, 1 *Cowen*, 613. *Van Horn* v. *Crain*, 1 *Paige*, 455. *Jackson* v. *Winslow*, 9 *Cowen*, 13. *Sweet* v. *Green*, 1 *Paige*, 473. *Vanderheyden* v. *Crandall*, 2 *Den.* 9. *Bank of Utica* v. *Mersereau*, 3 *Barb. Ch.* 528. *Rathbun* v. *Rathbun*, 6 *Barb.* 98.)

V. The charge of the court was therefore right, and the verdict should be sustained.

*By the Court*, EMOTT, J. The note upon which this action is brought was never, at any time, in the possession of W. W. Leland, to whom the defendant alleges that he paid it. Whether it was in the possession of Jerome, from whom Leland claims to have received it at the time when the transaction occurred, in 1858, in which the defendant insists that Jerome transferred the note to Leland, and whether Jerome then owned the note, are questions upon which there was, to some extent at least, a conflict of evidence at the trial. The note was made October 16th, 1855, by the defendant, Clark, payable to the order of E. B. Litchfield, one year after date, and it has been indorsed by the payee in blank without recourse. E. B. Litchfield, the payee, it is admitted transferred the note to Jerome before its maturity. In 1858, in the latter part of the year, but at what particular time is not stated, Jerome made an agreement with W. W. Leland to exchange certain promissory notes for some lands in Iowa. This agreement was carried into effect, Jerome receiving a conveyance of the land from Leland, and Leland a transfer of the notes from Jerome. This transfer imported or included a delivery of whatever notes were exhibited at the time ; for since these notes were, so far as appears, indorsed in blank, or otherwise transferable by delivery, and were produced to Leland, and by him left with Jerome as his agent

or depository, they were in law and in fact delivered to Leland.

The judge charged the jury that if Jerome was the owner of the note in question, in 1858, when he sold it to Leland, and he did so sell it but did not deliver it, yet the payments subsequently made by the defendant to Leland were good, and extinguished the note. As a proposition of law, upon the facts stated, this instruction is perfectly correct, but I am at a loss to see how, upon the evidence in the case, a jury could come to the conclusion that Jerome in 1858 was the owner of the note and sold it to Leland, but did not deliver it. The statement of the transaction by Leland, as I have already said, imports and includes a complete and effectual transfer of the note by Jerome. It is a cardinal feature of his story that the note in question was exhibited to him by Jerome during the negotiation. The evidence of Jerome and Litchfield, on the other hand, denies not only the sale of the note to Leland but the possession of the note by Jerome in January, 1858. The jury might have believed Leland and have come to the conclusion that Jerome sold and·delivered the note to him, although he was not the owner, but they could hardly have believed Leland's story of the transfer without believing that the note was at the time in the possession of Jerome, whoever was its owner. On the other hand, if they credited the evidence of Jerome and Litchfield, then the note was not only not owned by Jerome in December, 1857, and January, 1858, but was not in his possession. It seems to me that the whole transaction between Jerome and Leland was completed one way or the other, either with or without the transfer of the defendant's note. Jerome in effect delivered to Leland whatever notes he sold him, and the question is, whether this note was included in the transaction or not.

There was another view taken, however, of the case at the trial, which was material no doubt in producing the result at which the jury arrived, under the instructions which they re-

ceived from the court.    This was that Jerome sold the note in question to Leland in exchange for the Iowa lands, but that he neither owned it nor delivered it, at the time.    This is in effect the third of three possible or supposed states of the facts consistent with the theory that Leland purchased the note or agreed for its purchase of Jerome.    Either Jerome owned the note in December, 1858, and sold and delivered it to Leland, retaining its possession simply as agent of the latter ; or he transferred and delivered it to Leland, retaining its possession in like manner, but not being its owner at the time of the sale, or he sold it, that is received a consideration for it, and agreed to transfer and deliver but did not transfer it, and was not the owner of it at the time.    The last supposition involves also, as the evidence and the instructions of the court to the jury based upon such a theory of the case were understood, that Jerome was not only not the owner, but was not in possession of the note at the time of his transaction with Leland.    Assuming that Jerome sold Leland the note of the defendant in 1858, but did not own it at the time, and did not have it in his possession, then the question is presented upon which the last instruction of the learned judge at the trial was given to the jury.    There is another fact now to be mentioned which becomes important in this connection. In August or September, 1860, Edwin C. Litchfield, who had acquired the possession and at least an apparent title to the note at some previous time, retransferred the note to Jerome. Jerome continued the owner until it was transferred to the present plaintiffs.    The testimony of Litchfield and of Jerome is positive to the effect that the note was not in the possession or under the control of the latter from December, 1857, or January, 1858, when they say he transferred it to E. C. Litchfield, to August, 1860, when he received it back from Litchfield and again became its owner.    The defendant however contends that if Jerome was not the owner nor in possession of the note when he sold it to Leland in 1858, and did not deliver it to the purchaser at that time, yet that as

Scranton *v.* Clark.

he afterwards unquestionably acquired the title this enured to the benefit of Leland, and made the defendant's payment to him good and effectual, because upon such a sale Jerome must be deemed to have warranted the title to the note, by implication of law.

It must be considered as settled, in the jurisprudence of this state, that the rule of *caveat emptor* which obtains in the common law is subject to the exception that a warranty of title in the vendor is implied in a contract of sale. (1 *John.* 274. 20 *id.* 196.) But this exception is limited to cases where the vendor is at the time in the possession of the thing sold. This is the rule given by Ch. Kent, (2 *Comm.* 478,) and which is to be deduced from the authorities, although perhaps the question of a sale by a vendor not in possession was never distinctly discussed in the courts of this state until the case of *McCoy* v. *Artcher*, (3 *Barb. S. C. R.* 323.) In that case the authorities were examined, and the question discussed in a well considered opinion delivered by Mr. Justice A. J. Parker. The conclusion at which he arrived, and which no doubt received the sanction of the court, was that when the vendor had not possession at the time of the sale, no warranty of title would be implied. Ths contrary view expressed by Mr. W. W. Story in his treatise on *Contracts,* § 535, and on *Sales,* § 367, was disapproved and was shown to be at variance with the current authorities. A similar opinion to that stated in *McCoy* v. *Artcher* was expressed in *Edick* v. *Crim,* (10 *Barb.* 445,) and in *Hopkins* v. *Grinnell,* (28 *id.* 533.) The possession of the vendor is in truth the foundation of the implied warranty. Possession is as high evidence as a purchaser can have of the title to chattels. The vendor having the goods sells them as his own; and it may fairly be implied from his selling them under such circumstances that he represents and undertakes that they are his own. In the case of *Morley* v. *Attenborough,* (3 *Wels. Hurls & Gor.* 499,) it was held in the English court of exchequer that a pawnbroker who sold goods which had been pledged to him and

not redeemed, was bound by an implied warranty of title, because although the goods were in his possession, they were understood to be held by him not as his own property, but simply as pledges unredeemed. The character of his possession was such as to imply only that the goods had been pledged to him, and had not been redeemed, and not that he had title. and therefore he was held to have warranted no more. The opinion of the court was delivered by Baron Parke, and is very elaborate. Whatever may be thought of the main point decided, the case contains a strong sanction of the view that the implied warranty of a vendor's title admitted by our law, results from his possession and consequent apparent ownership, and depends upon the character of that possession.

If therefore Jerome made a contract to sell the note of the defendant to Leland when he was not its owner, and it was not in his possession, the purchase was at the risk of Leland, and the law implied no warranty by Jerome that he had the title to the note. The estoppel which the defendant invoked, therefore, failed. The extinguishment of the note which he asserted, in consequence of the subsequent acquisition of title by Jerome, could not have been effected. The instruction of the learned judge at the trial, upon this point, and which, upon the admitted facts of the case, amounted in effect to a direction to find in favor of the defendant, was erroneous.

It is said that if Jerome had brought an action upon this note after its retransfer to him, he must have been defeated by the payment to Leland. I am not prepared to admit this. When Clark paid Leland he knew that Leland did not have possession of the note, and he took the risk of the validity and effect of his payment. Leland could not have compelled payment without producing and canceling or accounting for the note. No doubt Leland could have recovered of Jerome the consideration which he paid for the note, and Clark could have recovered of Leland what he paid him. But neither payment, upon the state of facts shown here, amounted to

the face of the note, and if there would have been any equities between Jerome and Clark in the case supposed, they would not have effected the extinguishment of the note. I see no reason why Jerome should have been defeated in a suit against Clark because the latter had paid the note to Leland to whom Jerome had sold the note without having or delivering the possession, and without warranting the title. The whole question turns upon the warranty of title by Jerome, and when that does not exist, there is no foundation for such a defense.

There might be a distinction shown between such a case and that before us, however, and we are called upon at present to adjudicate upon the rights of these parties only.

The judgment must be reversed and a new trial ordered, with costs to abide the event.

[KINGS GENERAL TERM, February 9, 1863. *Brown, Emott, Scrugham* and *Lott,* Justices.]